UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HOMESTEAD REPAIR & RENOVATION, INC., and
BECKY MARINACCIO, Individually and On Behalf of
All Others Similarly Situated

                            Plaintiff,

v.

CITY OF BUFFALO, BYRON W. BROWN, in his capacity as
Mayor of the City of Buffalo, and KEVIN HELFER, in his
capacity as Commissioner of the City of Buffalo Parking
Violations Bureau and SENSYS GATSO USA, INC.

                          Defendants.
_____

**SECOND AMENDED
CLASS ACTION
COMPLAINT**

Case No.: 21-cv-00388

Plaintiffs Homestead Repair & Renovation, Inc. ("Homestead") and Becky Marinaccio ("Marinaccio"), individually and on behalf of all others similarly situated, by their attorneys HoganWillig, PLLC, for their Second Amended Class Action Complaint herein allege as follows:

## NATURE OF THE CASE

**1.**     This is a class action prosecuted pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking a declaration that the City of Buffalo's targeted use of a photo speed violation monitoring system in a low income, predominantly minority area that does not meet the statutory definition of a "school speed zone" under Section 1180-d of the New York's Vehicle and Traffic law ("VTL") and at times not authorized by the aforesaid statute, and the issuance of Notices of Violation pursuant to Section 1180 of New York's Vehicle and Traffic Law ("VTL") for alleged violations of the posted speed limits in the aforesaid area and times is unauthorized and illegal. A judicial determination is sought

that a reduced school speed limit is unauthorized in the aforesaid area and that the monies paid in response to the aforesaid Notices of Violation have been improperly received and retained by the City of Buffalo and Defendant Sensys Gatso USA, Inc. ("SGUSA") and must be returned to the Plaintiffs and Class members described herein. A determination is also sought that the imposition of vicarious liability relative to the aforesaid Notices of Violation on owners of vehicles being operated by persons other than the vehicle owners is unconstitutional.

## PARTIES

2.     Plaintiff Homestead is a corporation organized and existing under the laws of the State of New York with its principal offices located at 2410 North Forest Road, Suite 301, Amherst, New York 14068.

3.     Plaintiff Becky Marinaccio is a natural person residing at 105 Lynncrest Terrace, Cheektowaga, New York 14225.

4.     Upon information and belief, the City of Buffalo (the "City") is a municipal corporation organized and existing under the laws of the State of New York with its principal offices located at 65 Niagara Square, Buffalo, New York.

5.     Upon information and belief, Byron W. Brown is the Mayor of the City of Buffalo and has primary responsibility for the administration of the government of the City and his offices are located at 65 Niagara Square, Buffalo, New York; Byron W. Brown is named herein solely in his official capacity as Mayor of the City of Buffalo.

6.     Upon information and belief, Kevin Helfer is the Commissioner of the City of Buffalo Parking Violations Bureau and has primary responsibility for the operation of the Parking Violations Bureau with offices located at 65 Niagara Square, Buffalo, New

York; Kevin Helfer is named herein solely in his official capacity as Commissioner of the City of Buffalo Parking Violations Bureau.

7.    Upon information and belief, Defendant SGUSA is a corporation organized and existing under the laws of the State of Delaware with its principal offices located at 900 Cummings Center, Suite 316-6, Beverly, Massachusetts.

## JURISDICTION

8.    This Court is vested with original jurisdiction of the City, as a municipal corporation within the State of New York, and the additional defendants pursuant to New York CPLR §§ 301, *et seq*.

9.    Furthermore, as a party which has transacted business within New York State pursuant to the contract with the City of Buffalo described below, the Court may exercise personal jurisdiction over SGUSA pursuant to CPLR § 302(a)(1).

## VENUE

10.    Venue for this action is proper in the Western District as it is the judicial district to which the instant action was removed by the Notice of Removal filed herein on March 12, 2021 (Doc.1).

## STATEMENT OF FACTS

11.    Homestead is the owner of a vehicle with Vehicle Tag 191712ME (the "Vehicle").

12.    Acting through SGUSA under the contract described below, the City of Buffalo issued a Notice of Violation to Homestead referencing the "SCHOOL ZONE

SAFETY PROGRAM". The Notice of Violation states that it was "generated" November 23, 2020.

13.     The Notice of Violation depicts the Vehicle Tag in one photograph and depicts the Vehicle on a street in two additional photographs, listing the "Date and Time of Violation" as "11/17/20 @ 04:49 PM", the "Location of Violation" as "3125 Bailey Ave NB @ BPN Academy [Buffalo Promise Neighborhood Children's Academy]", lists the "Camera ID" as "2019080017", lists the "Posted Speed" as "15 mph", and the "Vehicle Speed" as "38 mph", lists the "Violation Number" as "049.0005450921" and states that the "Amount Due" is "$50.00" and the "Due Date" is "12/23/2020".

14.     The Notice of Violation further states:

> Please take notice that the vehicle described and pictured herein was detected and recorded by a speed monitoring system exceeding the posted speed limit by at least 11 MPH in violation of Section 1180 of the NYS Vehicle & Traffic Law. The pictured vehicle was traveling the speed listed below at the place, date and time specified. Therefore, under New York State Law, Section 1180 of the Vehicle & Traffic Law, the registered owner(s) or lessee you are liable for the violation. Unless you request a hearing, a civil penalty in the amount of $50.00 must be paid by the due date shown on this notice.

15.     The Notice of Violation demanded payment of a fine in the amount of $50.00. A copy of the Notice of Violation is attached hereto as **Exhibit "A"**.

16.     Plaintiff Marinaccio is the owner of a vehicle with Vehicle Tag HJZ3429 (the "Vehicle").

17.     Acting through SGUSA under the contract described below, the City of Buffalo issued a Notice of Violation to Plaintiff Marinaccio stating that the Vehicle was being operated over the posted speed on December 3, 2020 in the school speed zone

located at the Buffalo Promise Neighborhood Academy ("BPN Academy"); the Vehicle was being operated by Plaintiff Marinaccio's father.

18.     The Notice of Violation demanded payment of a fine in the amount of $50.00.

## A. The BPN Academy – Bailey Avenue Area

19.     The BPN Academy located at 3149 Bailey Avenue in the City of Buffalo is purportedly situated in a school speed zone under the School Zone Safety Program referenced in the aforementioned Notices of Violation.

20.     Upon information and belief, BPN Academy is a day care and pre-school facility where infants through five-year olds are enrolled for childcare services.

21.     As stated in the February 9, 2021 letter of Erie County Clerk Michael P. Kearns to the Commissioner of the New York State Department of Motor Vehicles attached as **Exhibit "B"**, of the "20 school zones in the City of Buffalo. . .70% are located in high-poverty census tracts, and 65% of school zones with cameras are in locations where minority residents outnumber white residents. Even more damaging, the City posted speed cameras in low-income, minority school zones with low vehicle crash rates."

22.     Upon information and belief, the BPN Academy-Bailey Avenue area is one of the low-income, minority school zones the County Clerk is referring to in the aforementioned letter.

23.     Furthermore, as shown by the data collected by the City of Buffalo Parking Violations Bureau in reference to the photo speed violation monitoring program established under VTL § 1180-d and furnished to the City of Buffalo Common Council on March 10, 2020 (see **Exhibit "C"**), of the fourteen (14) facilities where speed violation

monitoring cameras were then in use, the camera at the BPN Academy at 3125 Bailey Avenue (incorrectly called Westminster School) recorded the best speed compliance, despite also recording the most traffic (27,973 vehicle passes in the five-day test period).

24.    Additional indications that the primary purpose of the speed violation monitoring cameras at the BPN Academy location is generating revenue, not safety, are the following:

- Access to the BPN Academy is on East Amherst Street, not Bailey Avenue;

- Upon information and belief, of the southbound reduced school speed limit area on Bailey Avenue, approximately 70% (800 feet) is south of BPN Academy where it has no safety function related to the facility; and

- Under the National Manual of Uniform Traffic Control Devices ("MUTCD") which constitutes the applicable manual and specifications for traffic control devices in New York (17 N.Y.C.R.R. § 1A.07), the recommended starting point of the reduced school speed limit is 300 feet from the subject facility.

- Upon information and belief, under the contract between the City of Buffalo and SGUSA described below, not less than $14.00 of the $50.00 fine paid for a Notice of Violation issued under the photo speed violation monitoring program is collected and retained by SGUSA.

## CLASS ACTION ALLEGATIONS

25.    The Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seek certification of the following Class: Any vehicle owners who were issued Notices of Violation and required to pay fines for alleged violations of the posted speed limit through the City's use of the photo speed violation monitoring system installed at BPN Academy which is located in an area that does not meet the statutory definition under VTL § 1180-d of a "school speed zone" and was operated at times not authorized by the aforesaid

statute and where a reduced school speed limit is not authorized. Certification will also be requested for a Subclass consisting of vehicle owners to whom Notices of Violation were issued vicariously when the owner's vehicle was detected by the photo speed violation monitoring system installed at BPN Academy and the owner's vehicle was being operated by a person other than the owner.

26. **Numerosity.** The Plaintiffs do not yet know the size of the Class because that information is within the exclusive control of the City and discovery will be needed to determine the precise Class size. However, the following factors indicate that thousands of vehicle owners could be members of the Class: (a) As of May 28, 2021, 26,743 Notices of Violation have been issued to owners of vehicles passing BPN Academy on Bailey Avenue; (b) the population of the City of Buffalo (as of 2019) is 256,480 and the population of the Buffalo-Niagara metropolitan area (as of 2018) is 1,130,152, (c) VTL § 1180-d authorizes the City to install and use the photo speed violation monitoring system at issue in this action in twenty (20) school speed zones, (d) one speed violation monitoring camera located on Bailey Avenue near BPN Academy recorded 27,973 vehicle passes in a five-day period, and (e) according to a Resolution of the Buffalo City Common Council entitled "Review and Refund of Invalid School Speed Zone Citations" attached as **Exhibit "D"**, the number of invalid citations issued by the City is so significant that the City Common Council resolved to request that the City refund the payments of fines.

27. **Commonality and Predominance.** This action involves common questions or law and fact that predominate over any questions affecting individual Class members. These common questions include, but are not limited to:

a) Whether by VTL § 1180-d the City of Buffalo was only authorized to operate photo speed violation monitoring systems in areas that meet the definition of a "school speed zone" under Section 1180-d of the VTL, and at times authorized by the aforesaid statute;

b) Whether the City and SGUSA used the photo speed violation monitoring system to detect school speed zone violations in an area that does not constitute a school speed zone and at unauthorized times;

c) Whether the City and SGUSA used the photo speed violation monitoring system to detect school speed zone violations in an area where a reduced school speed limit was not authorized;

d) Whether the Notices of Violation issued in the above-referenced manner are illegal, void, and unenforceable;

e) Whether members of the Class were damaged by paying fines in response to Notices of Violation that were illegal, void, and unenforceable, as aforesaid, and the City and SGUSA are required to return those monies to the members of the Class; and

28. **Typicality.** The Plaintiffs are a typical of members of the Class. The Plaintiffs were issued a Notice of Violation and required to pay fines after a vehicle owned by the Plaintiff was detected by a photo speed violation monitoring system while driving over the posted speed limit (15 MPH) in an area that does not meet the definition of a "school speed zone" under Section 1180-d of the VTL and at a time not authorized by the aforesaid statute and in an area where a reduced school speed limit was not authorized.

29.     **Adequacy.** The Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter to obtain relief for all members of the Class. The Plaintiffs have no conflicts of interest with the Class and the Plaintiffs have counsel competent and experienced in complex class action litigation. The Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

30.     **Superiority.** Class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The primary purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to the individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by the Plaintiffs and the Class members may be relatively small compared to the burden and expense required to individually litigate their claims against the City and SGUSA and, therefore, individual litigation to redress the wrongful conduct of the City and SGUSA would be impracticable. Individual litigation by each Class member would also strain the Court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the Court system. By contrast, the class action mechanism presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision. Furthermore, in addition to disclosure pursuant to the Federal Rules of Civil Procedure, the identity of potential Class members can be ascertained by providing reasonable notice to the potential class members using

recognized, court-approved notice dissemination methods such as publication in a local newspaper, U.S. Mail, internet postings and other similar media.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT

### (Illegal Notices of Violation)

31.     The Plaintiffs repeat and reallege paragraphs "1" through "30" as if fully set forth herein.

32.     Under VTL § 1180-d which became effective on September 6, 2019, the City of Buffalo was permitted to establish a demonstration program imposing monetary liability on the owner of a vehicle for the failure of the operator to comply with maximum posted speed limits in school speed zones in the City.

33.     In accordance with VTL § 1180-d, the City of Buffalo Parking Violations Bureau has responsibility for adjudicating the liability to be imposed on vehicle owners through the use of the aforesaid demonstration program.

34.     Under a Contract for Services (the "Contract") between the City of Buffalo and SGUSA, the City engaged SGUSA to (a) install and maintain camera equipment for the above-described photo speed violation monitoring program, (b) issue and process Notices of Violation after cameras installed by SGUSA recorded speed limit violations in a school speed zone, and (c) collect fines paid by vehicle owners to whom Notices of Violations were issued.

35.     Under the Contract, SGUSA deducted monies from the fines paid by vehicle owners for Notices of Violation for service fees, credit card convenience fees and camera

relocation fees; upon information and belief, as noted above, not less than $14.00 was deducted by SGUSA for every $50 fine it collected.

36.     The statutory demonstration program prescribed by VTL § 1180-d empowered the City of Buffalo to install photo speed violation monitoring systems within no more than twenty (20) school speed zones in the City.

37.     The aforementioned photo speed violation monitoring system has the technological capacity to detect and record violations of the posted 15 MPH speed limit within school speed zones in the City of Buffalo and photograph vehicles allegedly being operated over the speed limit.

38.     Under Subsections (a) and (c) of VTL § 1180-d, to be authorized for use the photo speed violation monitoring system must be installed in a "school speed zone", which "means a distance not to exceed one thousand three hundred twenty [1,320] feet on a highway passing a school building, entrance or exit of a school abutting on a highway."

39.     In order to qualify as a school for purposes of being included in a "school speed zone" where a photo speed violation monitoring system may be installed pursuant to VTL § 1180-d, the subject institution must have the following characteristics:

- It must offer educational instruction to children at the elementary through high school levels;

- It must have an educational curriculum;

- It must have a qualified staff to provide the aforementioned educational objectives; and

- It must have adequate physical facilities to provide the foregoing.

40.     Instead of being a school where educational instruction complying with a curriculum is offered with a qualified staff at the elementary through high school levels, as noted above, at BPN Academy infants through five-year-old's are enrolled for day care and pre-school childcare services and, as such, it is not a school for purposes of VTL § 1180-d.

41.     The fact that BPN Academy is not a school for purposes of VTL § 1180-d is confirmed by the fact that BPN Academy was not treated as a school for purposes of VTL § 1180-d by the City.

42.     In that regard, on October 6, 2020, Governor Cuomo issued Executive Order 202.68 providing for a "cluster action initiative" under which the New York State Department of Health was to establish restrictions to address the COVID-19 pandemic with varying levels of severity: "yellow zone" being "precautionary", "orange zone" being "moderate severity" and "red zone" being "most severe"; on November 18, 2020, portions of Erie County and the City of Buffalo were designated as "orange zones".

43.     As a result, four (4) schools where photo speed violation monitoring systems were in use pursuant to VTL § 1180-d were closed on November 20, 2020 and the photo speed violation monitoring systems were suspended; however, BPN Academy was not closed and the monitoring system adjacent to BPN Academy remained in use.

44.     The foregoing clearly demonstrates that the City does not consider BPN Academy to be a school required to be closed under the Governor's applicable Executive Orders.

45.     Furthermore, in accordance with VTL § 1180(c), the authority granted to the City of Buffalo to utilize a photo violation monitoring system in a school speed zone under VTL § 1180-d is expressly limited to the following times:

- [O]n school days during school hours and one hour before and one hour after the school day, and

- [A] period during student activities at the school and up to thirty minutes immediately before and up to thirty minutes immediately after such student activities.

46.     "[S]chool days" and "a period of student activities at the school" necessarily contemplate a time period when the school in the school speed zone is in session and children are in attendance for instructional purposes or some other student activities at the school.

47.     Inasmuch as BPN Academy is not a school for purposes of VTL § 1180-d, the subject photo speed monitoring system is also being improperly utilized because it is not, and cannot, be utilized "on school days" or "during student activities at [a] school."

48.     Moreover, under the applicable standard prescribed by the MUTCD which - as noted - constitutes the applicable manual and specifications for traffic control devices in New York (Section 7B.15,00F), in order for a reduced school speed limit zone to be established in reference to a facility in New York, the facility must be a school, the facility and applicable government entity responsible for the highway where the facility is located must provide written documentation of their support for a reduced school speed limit, and the following additional conditions **must** be met:

- Some of the children who attend the facility must walk or bicycle to or from the facility, or

- The facility and related facilities (i.e., classrooms, cafeteria, playground, etc.) are separated by a highway and the children

are required to cross the highway on foot to access the facilities.

49.    In addition to not being a school for the reasons stated above, since children do not walk or bicycle to or from BPN Academy and some of the facilities comprising the BPN Academy are not separated by a highway, the BPN Academy does not satisfy the above-stated conditions of the MUTCD and, therefore, a reduced school speed limit is not authorized where the SGUSA has installed a photo speed violation monitoring system on Bailey Avenue on behalf of the City of Buffalo in reference to BPN Academy.

50.    The MUTCD also recommends that "[w]here a school speed limit is established and if students must cross a highway at a school" there should be "a marked crosswalk. . . supervised by an adult crossing guard; . . ." (Section 7B.15,00G).

51.    There is no crosswalk at Bailey Avenue at the East Amherst Street intersection where BPN Academy is located because BPN Academy is **not a school** where students would cross Bailey Avenue for access; it is a childcare facility where infants, toddlers and pre-school children are enrolled who gain access with adults on East Amherst Street.

52.    Lastly, VTL §1180-d(a)(2) expressly requires the City of Buffalo to give advance "notice that a photo speed violation monitoring system is in use" by providing notice on an advance warning sign.

53.    The City and SGUSA have not complied with the statutory advance warning requirement because the only sign that resembles a camera on the southbound lane of Bailey Avenue is directly across the street from BPN Academy.

54.    Since BPN Academy (a) cannot be deemed to be a school being included in a "school speed zone" where a photo speed violation monitoring system may be

installed pursuant to VTL § 1180-d, (b) the subject system is being used at times not authorized by the aforesaid statute and where a reduced school speed limit is not authorized and (c) the City and SGUSA have failed to comply with the statutory advance notice requirement, Notices of Violation issued to the Plaintiff and to all Class members for alleged violations detected using the photo speed violation monitoring system on Bailey Avenue adjacent to BPN Academy are illegal, void and unenforceable.

55.     In addition to the above-described manner in which the School Zone Safety Program has been improperly utilized in the BPN Academy school speed zone, the Program has been improperly applied in all of the school speed zones in the following manner:

- School speed limit signs have not been installed at a distance of 1,320 feet as required under City Code Ch, 479-14(4)B, and have instead been placed much closer to school buildings and speed cameras, thus giving drivers less time to slow their vehicles before entering speed camera enforcement zones;

- In City of Buffalo speed camera citation appeal hearings, the same New York State-licensed attorneys serve as both the Administrative Hearing Officer and the Traffic Prosecutor on behalf of the City of Buffalo, which is prohibited under New York Rules of Professional Conduct, 22 N.Y.C.R.R. Part 1200;

- In City of Buffalo speed camera citation appeal hearings, the technician responsible for certifying the evidence against the citation recipient is not present, and although New York State Vehicle & Traffic Law §1180-D(d) indicates that the signature of a certifying technician on a speed camera citation represents prima facie evidence of the facts contained therein, such certifications are neither sworn to nor affirmed before a notary public or other authorized official, for which reason the New York State Supreme Court has declared invalid speed camera citations with only a certifying technician's signature (*Street v. City of New York*, 2020 N.Y. Slip Op. 32645 (N.Y. Sup. Ct. 2020);

- Thousands of speed camera citations were issued to vehicle owners before the cameras were calibrated by an independent calibration laboratory as required by New York State Vehicle & Traffic Law §1180-D(a)(2)(ii);

- The Contract for Services between the City of Buffalo and SGUSA states that "the terms of this agreement. . . shall be subject to the prior approval of the Buffalo Common Council . . ." (Section 14(a)); however, no formal request to approve the specific terms of said contract was ever submitted to the Common Council of the City of Buffalo for a vote, nor did the Common Council provide the same despite the City's execution of said contract.

56.     On or about May 25, 2021, the Common Council of the City of Buffalo enacted an Ordinance Amendment which repealed and discontinued the use of the photo speed violation monitoring system, effective no later than August 31, 2021.

57.     By reason of the foregoing, the Plaintiffs and Class members are entitled to a judicial declaration that the Notices of Violation issued by SGUSA on behalf of the City of Buffalo under the demonstration program in the aforesaid area and at unauthorized times are illegal, void and unenforceable.

### SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT
### (As Applied, The Statute is Unconstitutional)

58.     The Plaintiffs repeat and reallege paragraphs "1" through "57" as if fully set forth herein.

59.     As stated above, as applied to the Plaintiffs and Class members to whom Notices of Violation were issued for allegedly driving above the 15 MPH posted speed

limit in the school speed zone purportedly including BPN Academy, the Notices of Violation are illegal, void and unenforceable.

60.     The impropriety of the City acting without authority by issuing of illegal Notices of Violation is compounded by the conduct of the City – and the conduct of SGUSA acting in conjunction with and on behalf of the City - of imposing vicarious liability pursuant to illegal Notices of Violation and demanding the payment of fines on owners of vehicles such as the Plaintiffs and Subclass members when the vehicles were not driven by the owners, but by persons other than the vehicle owners.

61.     The Fifth and Fourteenth Amendments of the United States Constitution require, *inter alia*, that the Federal and State governments may not deprive any person of life, liberty, and property without due process of law. See *U.S. Const. Amends. V and XIV*.

62.     Substantive Due Process is a form of Due Process recognized by the Supreme Court of the United States and allows Courts to strike down laws that are unreasonable and arbitrary or without relation to the purpose of the legislation. See *Nebbia v. New York*, 281 U.S. 502 (1934).

63.     Because BPN Academy is not a school and is therefore not located in a school speed zone as expressly required by VTL § 1180-d, and since the subject photo speed violation monitoring system is being operated at times not authorized by the aforesaid statute and where a reduced school speed limit is not authorized, as applied to the Plaintiffs and Subclass members vicariously as owners of the vehicles allegedly being operated by persons other than the vehicle owner, VTL § 1180-d is unreasonable and arbitrary and without relation to the purpose of the legislation.

64.     Furthermore, since the Notices of Violation for the photo speed violation monitoring system indicate that the failure to pay the subject fine by the due date state on the initial Notice of Violation constitutes an automatic admission of guilt, even though the Notices of Violation are mailed by first class mail only, and neither the City nor SGUSA have the ability to verify whether any Notices of Violation are actually received by the addressee, the aforesaid procedure providing for an automatic admission of guilt violates the due process rights of the vehicle owner.

65.     Therefore, as applied to Plaintiffs and Class members to whom Notices of Violation were issued by ordinary mail, as well as the Plaintiffs and Subclass members to whom liability for illegal Notices of Violation was imposed vicariously, VTL § 1180-d is unconstitutional.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

66.     The Plaintiffs repeat and reallege paragraphs "1" through "65" as if fully set forth herein.

67.     The City of Buffalo – and SGUSA while acting on behalf of the City of Buffalo – have received and retained monies paid by the Plaintiffs and Class members through issuing invalid Notices of Violation relative to the BPN Academy school speed zone demanding the payment of fines.

68.     Moreover, in causing invalid Notices of Violation to be issued to owners of motor vehicles relative to the BPN Academy school speed zone, the City of Buffalo and SGUSA knew and expected that vehicles owners would rely on the Notices of Violation to conclude they had a legal obligation to pay the $50 fine and would be induced to send

payment to the address listed on the Notice of Violation, which is a mailing address where SGUSA receives payments of fines: "Citations Processing Center, BFLO, P.O. Box 7200, Beverly, MA 01915."

69.     The City of Buffalo and SGUSA wrongfully received the aforesaid payments from the Plaintiffs and Class members and benefited from the receipt of the monies.

70.     Under principles of equity and of good conscience, the City of Buffalo and SGUSA should not be permitted to keep the aforesaid payments and those monies should be immediately refunded to the Plaintiffs and Class members.

71.     Accordingly, the Plaintiffs and Class members are entitled to a Judgment in the amount of the payments wrongfully received and retained by the City of Buffalo and SGUSA, plus appropriate interest.


WHEREFORE, the Plaintiffs and Class members respectfully request the following relief:

> (a) A declaration that the Notices of Violation issued by the City of Buffalo and SGUSA pursuant to VTL § 1180-d by the use of a photo speed violation monitoring system in an area that does not meet the definition of "school speed zone" under Section 1180-d(c) of the VTL, at times not authorized by the aforesaid statute and at locations where a reduced school speed limit is not authorized, and without providing the statutory advance notice of the monitoring system are illegal, void and unenforceable;

> (b) A declaration that – as applied to the Plaintiffs and Class members from whom automatic admissions of guilt were procured, and as applied to

the Plaintiffs and Subclass members as owners of vehicles for which illegal, void and unenforceable Notices of Violation were issued vicariously – VTL § 1180-d is unconstitutional;

(c) Judgment in favor of the Plaintiffs and Class members against the City of Buffalo and SGUSA for all monies paid in response to the illegal Notices of Violation described herein, plus appropriate interest, reasonable attorneys fees and costs of this action; and

(d) Such other and further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs respectfully request a jury trial of all matters so triable.

Dated:    July 29, 2021
           Amherst, New York

HOGANWILLIG, PLLC

By: _____

Edward P. Yankelunas, Esq.
*Attorneys for Plaintiffs*
2410 North Forest Road, Suite 301
Amherst, New York 14068
Telephone: (716) 636-7600